IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLINT N. LEWIS,                          )
                                         )
        Plaintiff,                       )
                                         )        Civil Action No.  08-1365
                v.                       )
                                         )        Magistrate Judge Lisa Pupo Lenihan
DELP FAMILY POWDER COATINGS,             )
INC., *et al.,*                          )        ECF Nos.  46 & 49
                                         )
        Defendants.                      )
                                         )

**OPINION**

LENIHAN, M.J.

        Currently before the Court for disposition are two motions for summary judgment in this

diversity case, which arises out of Defendants' alleged lease and use of commercial real property

owned by Plaintiff located in Fenelton, Pennsylvania.   Defendants have moved for partial

summary judgment (ECF No. 46) on three bases:   (1) Plaintiff has not and cannot produce

sufficient evidence from which a jury could find that Defendants expressly contracted to pay

Plaintiff's attorneys' fees, (2) Plaintiff's claims of negligence and promissory estoppel are not

entitled to recovery of attorneys' fees, and (3) Plaintiff's negligence claim is barred by the gist of

the action doctrine.   Plaintiff has also filed a motion for summary judgment (ECF No. 49),

arguing that there are no material facts in dispute and that he is entitled to judgment as a matter

of law, on the following points:   (1) Defendants breached the oral lease agreement and are

responsible for unpaid (abated) rent, unauthorized alterations, and property damage; (2)

Defendants' negligence in operating and maintaining their powder coating operation caused

property damage to Plaintiff's building in the form of damaged roof shingles, sheathing and

trusses, concrete slab, and unpermitted disposal of industrial wastewater in violation of

Pennsylvania law; and (3) Plaintiff's evidence is undisputed that his property suffered a diminution of value due to the extensive property damage.

For the reasons set forth below, the Court will grant Defendants' Motion for Partial Summary Judgment motion, and will deny Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

At all relevant times, Plaintiff, Clint N. Lewis, owned commercial real estate located at 1605 Route 422 E, Fenelton, Pennsylvania 16034 (the "Subject Property"). (Am. Compl. ¶ 1, ECF No. 20.) At the time this lawsuit was filed, Plaintiff resided in Westfield, Indiana. Defendants Clyde C. Delp and Donna Delp are husband and wife and reside in Butler, Pennsylvania. Defendants Walter A. Delp and Carol Delp are husband and wife and reside in East Kittanning, Pennsylvania. Defendants Clyde C. Delp, Donna Delp, Walter A. Delp, and Carol Delp are collectively referred to as the "Delps" or the "Individual Defendants." Defendant Delp Family Powder Coatings, Inc. ("DFPC") was incorporated on or about April 8, 2002 under Pennsylvania law,[1] with its principal place of business in Fenelton, Pennsylvania, and operated a powder coating business on the commercial property owned by Plaintiff. Clyde Delp and Walter Delp are the President and Vice-President of DFPC, respectively. (Clyde Delp Dep. at 207.) Plaintiff seeks damages in excess of $75,000 for the alleged damage to his property and for the diminution in value to the property.[2]

In or about January of 2002, Plaintiff's father, Nick Lewis, entered into discussions with Clyde Delp and Walter Delp regarding the leasing of the Subject Property to the Defendants for

---

[1] According to the Pennsylvania Department of State, the incorporation date of DFPC is April 8, 2002. However, Defendants contend that the creation date of DFPC is disputed. Defs.' Am. Resp. to Pl.'s Concise Stmt. Material Facts at ¶9, ECF No. 67.

[2] Thus, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(a)(1).

the purpose of operating a family powder coating business, which had yet to be formed. In February of 2002, Clyde Delp tendered $500.00 cash to Nick Lewis as a deposit to hold the building until February 25, 2002. Although Nick Lewis and Clyde and Walter Delp agreed that $3,000.00 per month was a fair price for rent of the Subject Property, in early March of 2002, they negotiated a reduction in the rent for the first six months to $1,500.00 per month.[3] On March 7, 2002, Clyde Delp sent Nick Lewis a check for $1,500.00 for the first month's rent written from the personal checking account of Clyde and Donna Delp. On April 5, 2002, Walter Delp paid $1,500.00 for the April rent by personal check from the account of Walter and Carol Delp.

Clyde and Walter Delp, initially as the incorporators of DFPC, and subsequently, as its officers, intended that the only parties to the lease would be themselves, as officers of DFPC, and Nick Lewis. (Clyde Delp Dep. at 99.) However, Plaintiff maintains that all of the Individual Defendants, as well as DFPC, were parties to the lease agreement. Clyde and Walter Delp further maintain that they entered into an oral lease with Nick Lewis upon the understanding that a written lease agreement would be entered into after the corporation was formed. However, it appears that a written lease agreement was never negotiated nor executed.

Nonetheless, the Delps continued operating the powder coating business for over four years under the oral lease. On May 4, 2006, Plaintiff's attorney at that time, David A. Crissman,

---

[3] The parties disagree, however, as to the reason for the reduction in rent and whether the reduction was to be repaid. Plaintiff contends that the $9,000.00 reduction for the first six months was an abatement to assist the business during its start up period and was to be collected later on during the term of the lease. On the other hand, Clyde and Walter Delp contend that during lease negotiations, Nick Lewis represented to them that the Subject Property possessed 480 volt electric line and natural gas, but an inspection of the property in early March revealed otherwise. Clyde and Walter Delp informed Nick Lewis that there would be no lease without the 480 volt electric line and natural gas. According to Clyde and Walter Delp, Nick agreed to reduce the rent to $1,500.00 a month for the first six months in exchange for the Delps paying for the materials and labor to make modifications to the building needed for the powder coating operation. Clyde and Walter submit that they never agreed to repay the rent reduction nor did Nick Lewis expect them to do so. (Clyde Delp Dep. at 59-61.)

Esquire, sent a letter to Clyde Delp and family and Walter Delp and family, in which he gave the Defendants an ultimatum—either pay the $9,000 allegedly due in abated rent and sign a written lease agreement within thirty days, or the oral lease would be terminated and Defendants would have to vacate the premises.[4] (Pl.'s App. in Supp. Resp. Concise Stmt., Ex. 4, ECF No. 57-1.) Defendants disputed that they owed $9,000.00 in abated rent, and continued to occupy the premises and pay rent through September 2006.

After Defendants vacated the Subject Property in September of 2006, Plaintiff and/or Nick Lewis inspected the property and purportedly found damage to the Subject Property, which Plaintiff claims consisted of damage to the roof trusses, roof decking, shingles, walls, footers, concrete pads, septic system, electrical service and wiring, phone lines, storage shelves and damages arising out of Defendants' failure to properly dispose of hazardous materials at the Subject Property. Defendants dispute that their powder coating operation caused the alleged damages, and submit that many of the building components were already damaged when they took possession in March of 2002, and that the electrical and other systems were in working order when they vacated the premises. Plaintiff claims he decided to sell the property "as is" for a diminished value, because the cost of the repairs would have been too high. Although the Subject Property allegedly had a fair market value of $1,100,000 (exclusive of property damage and liability, and based on the appraisal by Plaintiff's real estate expert Kelly), Plaintiff sold the property for substantially less, in "as is" condition, for $590,000.

Plaintiff filed a claim for the property damage with his insurance company, Atlantic States Insurance Company ("Atlantic States"), which denied the claim. After Atlantic States

---

[4]Specifically, Attorney Crissman informed Defendants that they would have to meet the following three conditions in order to remain as tenants: (1) payment of $9,000.00 allegedly due in deferred rent, (2) providing additional information regarding the powder coating operation, and (3) executing written lease agreement, all within thirty days of May 4, 2006. (Pl.'s App. Ex. 4, ECF No. 57-1.)

denied his claim Plaintiff sued Atlantic States in this District, at Civil Action No. 2:08-cv-1040.[5]

Shortly thereafter, Plaintiff filed the instant lawsuit against the Defendants, asserting three claims—breach of contract against the Individual Defendants (Count I); negligence against all Defendants (Count II); and promissory estoppel against the Individual Defendants (Count III). (Am. Compl., ECF No. 20.)  In response, Defendants filed three counterclaims—in the first and second counterclaims, DFPC filed a breach of contract claim and quantum merit claim, respectively, against Plaintiff; in the third counterclaim, the Delps brought a wrongful use of civil proceedings claim against Plaintiff.  (Ans., ¶¶ 81-93, ECF No. 21.)  After the close of discovery, Defendants filed a Motion for Partial Summary Judgment (ECF No. 46), and Plaintiff filed his own Motion for Summary Judgment (ECF No. 49).  The motions have been fully briefed and responded to, and thus, are ripe for disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be

---

[5] That case has been stayed  pending the outcome of the dispute in the present matter.

entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.   DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.   Relevant Facts

The facts material to Defendants' motion for partial summary judgment are derived largely from Plaintiff's deposition testimony. Specifically, Defendants point to Plaintiff's testimony that the Delps entered into an oral lease with him for the use of the Subject Property to operate a family powder coating business. (Defs.' Concise Stmt. Material Facts in Supp. Mot. Partial Summ. J. ("Defs.' CSMF in Supp. SJ") at ¶3, ECF No. 47; Pl.'s Responsive Concise Stmt. Material Facts ("Pl.'s Resp. CSMF") at ¶¶ 2-3, ECF No. 57.) Plaintiff further testified that DFPC was not a party to the oral lease. (ECF No. 47, ¶2; ECF No. 57, ¶¶2-3.) Although the parties discussed their intent to enter into a written lease agreement, one was never executed nor negotiated. (ECF No. 47, ¶¶1, 7-8; ECF No. 57, ¶¶1, 7-8.)[6] Specifically, Plaintiff testified that the proposed lease agreement attached to his Amended Complaint as Exhibit I, which provided in part for attorneys' fees, was never negotiated between the parties. (ECF No. 47, ¶ 7; ECF No. 57, ¶ 7.) In addition, there is no written agreement between Plaintiff and the Individual Defendants and/or DFPC regarding payment of his attorneys' fees.

---

[6] Plaintiff denies that there was no written lease agreement, and he bases his denial on the parties' (Plaintiff's and the Individual Defendants') contemplation of such an agreement and agreement to sign a written lease. (Pl.'s Resp. CSMF at ¶ 1, ECF No. 57.) However, that does not negate the undisputed fact that a written lease agreement was not executed by the parties.

In paragraph 29 of his Amended Complaint, Plaintiff testified that he was referring to both the Individual Defendants and DFPC when he alleged that "[p]ursuant to the agreement between the parties, Defendants assumed all obligations, covenants and conditions of the Tenants under the oral lease and were advised that hazardous materials were not permitted on the Subject Property." (ECF No. 47, ¶ 5; ECF No. 57, ¶ 5.) In paragraph 32 of his Amended Complaint, Plaintiff testified that he was referring to both the Individual Defendants and DFPC when he alleged that "[t]he Lease places all responsibility for repairs and maintenance of the Subject Property, including both structural and non-structural elements, solely on Defendants, the Tenants." (ECF No. 47, ¶ 6; ECF No. 57, ¶ 6.)

## B.  Discussion

Defendants move for summary judgment on two issues—whether Plaintiff is entitled to recover his attorneys' fees from Defendants, and whether Plaintiff's negligence claim is barred by the gist of the action doctrine. The Court will address each argument in turn.

### 1.  Plaintiff's Attorneys' Fees

Generally, Pennsylvania state courts follow the American Rule in determining whether to award attorneys' fees in a given case. In essence, the American Rule provides that the "parties to litigation are responsible for their own counsel fees, 'unless otherwise provided by statutory authority, agreement of the parties, or some other recognized exception.'" *Mrozek v. Eiter,* 805 A.2d 535, 538 (Pa. Super. Ct. 2002) (quoting *Hart v. O'Malley,* 781 A.2d 1211, 1216 (Pa. Super. Ct. 2001)) (citing *Merlino v. Delaware County,* 728 A.2d 949, 951 (Pa. 1999) ("This Court has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception.")). *See also O'Brien v. Travelers Prop. & Cas. Ins. Co.,* 65 F. App'x 853, (3d Cir. 2003). Moreover, Pennsylvania courts have routinely applied the

American Rule to deny recovery of attorneys' fees in breach of contract and negligence cases. *See, e.g., Jama Corp. v. Gupta,* Civ. A. Nos. 3:99-cv-01624 & 1574, 2008 WL 108671, *3 (M.D.Pa. Jan. 4, 2008) (citing *Krassnoski v. Rosey,* 684 A.2d 635, 637 n.2 (Pa. Super. Ct. 1996)); *Allegrino v. Conway E & S, Inc.,* Civ. A. No. 09-1507, 2010 WL 2035658, *12 (W.D.Pa. May 18, 2010) (citing cases) (footnote omitted).

Defendants submit that under the American Rule, a prevailing party cannot recover attorneys' fees from an adverse party without an express statutory provision, a clear agreement by the parties, or some other established exception. In the case at bar, Defendants contend that there is no evidence in the record to show that any of the Defendants expressly contracted to pay Plaintiff's attorneys' fees. According to Defendants, given that DFPC was not a party to the oral lease, and none of the Defendants entered into a written agreement regarding payment of attorneys' fees, the record evidence fails to show that any of Defendants expressly contracted to pay Plaintiff's attorneys' fees. Defendants further contend that there are no genuine issues of material fact and all Defendants are entitled to summary judgment as a matter of law as Plaintiff's legal and equitable claims of negligence and promissory estoppel do not provide for recovery of attorneys' fees.

In response, Plaintiff acknowledges the American Rule, but requests that the Court deny, or at least defer until time of trial, the portion of Defendants' motion for partial summary judgment seeking dismissal of Plaintiff's prayer for attorneys' fees. In support, Plaintiff argues that one or more exceptions to the American Rule may apply here. In particular, Plaintiff points to 42 Pa. Cons. Stat. Ann. §2503 and Federal Rule of Civil Procedure 11, as potentially providing authorization to award attorneys' fees. Section 2503 is a Pennsylvania statute authorizing an award of attorneys' fees, *inter alia,* as a sanction for dilatory, obdurate or vexatious conduct, and Rule 11 provides for sanctions where Rule 11(b) has been violated.

Plaintiff's response misses the mark. Both the statutory provision and rule cited by Plaintiff are to be used as a sanction where either counsel or a party is found to have engaged in bad faith or dilatory conduct *during the litigation*. There is simply no allegation or evidence in the record that any of the Defendants or their counsel engaged in behavior during this litigation that would justify an award of attorneys' fees under either Section 2503 or Rule 11. Accordingly, neither Section 2503 nor Rule 11 provides Plaintiff with an exception to the American Rule.

Next, Plaintiff posits that the evidence at trial may result in a finding by the triers of fact that Defendants deliberately evaded a written commercial property lease, which would have included a provision for attorneys' fees. In such case, Plaintiff submits that the jury or Court would be authorized to award Plaintiff his counsel fees. In support, Plaintiff incorporates his Responsive Concise Statement of Material Facts (ECF No. 57), which he submits contains "direct or inferential evidence that Defendant willfully breached the agreement and used such as a pretext to avoid the written agreement."[7] (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. at 2, ECF No. 56.) The Court is not persuaded by Plaintiff's argument.

First, assuming, for argument's sake, that Plaintiff could successfully prove at trial that Defendants deliberately evaded a written commercial property lease, which seems questionable given the summary judgment record, Plaintiff has failed to show, or at least raise a material issue of fact, that the written agreement allegedly evaded actually existed. Plaintiff, as well as Clyde and Walter Delp, testified that neither side entered into any negotiations with regard to the proposed lease agreement. The parties further agree that the proposed lease agreement was never executed. Moreover, Plaintiff has not provided any evidence to show that the written agreement Defendants allegedly evaded was the proposed lease agreement attached to his Amended

---

[7] In further support of his willful breach argument, Plaintiff contends Defendants agreed to provide insurance coverage for their operation, but Defendants' insurer(s) failed to cure their damage to his

Complaint as Exhibit I. Indeed, Clyde and Walter Delp both testified they never saw the proposed lease agreement before this litigation began, and their testimony is not disputed. Therefore, to the extent Plaintiff relies on the attorneys' fee provision in the proposed lease agreement to provide an exception to the American Rule, such reliance is misplaced.

Second, Plaintiff does not identify specifically which paragraphs of his Responsive Concise Statement of Material Facts support his argument. From the Court's own review of Plaintiff's Responsive Concise Statement of Material Facts, it appears that the only paragraph that is relevant to this argument is paragraph 1. And when the Court reviews paragraph 1 of Plaintiff's Responsive Concise Statement of Material Facts, it cannot conclude that the cited evidence provides authority for an award of counsel fees.[8] Rather than try to establish the existence of a written agreement which includes a provision for attorneys' fees, Plaintiff turns instead to the record to point out conduct by Defendants from which a reasonable jury could

---

property. (ECF No. 56 at 2.) However, Plaintiff fails to cite any support for this statement in the record.

[8] Specifically, in paragraph 1, Plaintiff cites the deposition testimony of Clyde Delp, to the effect that Clyde told Nick Lewis he expected a written lease, and wanted the lease in writing because he did not want any misunderstanding (Clyde Delp Dep. at p. 45, lines 21-25; p. 46, lines 18-20.) Clyde further testified that there was an oral agreement that if everything worked out, starting in April, everything he and Nick Lewis agreed to verbally would be put in a written agreement; Nick Lewis was supposed to come up with a written agreement that Clyde could present to his attorney (*Id.* at p. 55, lines 23-25, p. 56, lines 1-9). Plaintiff also cites to the deposition of Nick Lewis at page 54, lines 4 through 8, but the cited testimony merely indicates that at a meeting (date unknown) with Nick Lewis, Clyde and Walter Delp did not give Nick any written information about the terms that they wanted to have in the lease or agreement to lease the property. Plaintiff also cites Clyde Delp's testimony in support of the statement in his Responsive CSMF that the "individual Defendants, through their own conduct, later evaded Plaintiff's efforts to secure the written lease." Pl.'s Resp. CSMF at ¶1, ECF No. 57 (citing Clyde Delp Dep. at p. 101, lines 15-25 – p. 102, lines 1-5). However, the Court finds nothing in the cited portion of Clyde's deposition testimony to support such statement. Similarly, Plaintiff fails to cite to evidence in the record which supports his statement "Defendants' continued non-compliance with the Plaintiff's tolerant requests, . . .." *Id.* In addition, the remaining cites to the record in paragraph 1 (Clint Lewis Dep. at p. 194, lines 8-13; May 4, 2006 letter from Attorney Crissman to Defs. (Pl.'s App. Exs. 1 & 4, ECF No. 57-1).) provide evidence of Plaintiff's position, that it appeared to Clint Lewis that Defendants were not going to honor the oral agreement between them, and that Defendants would have to satisfy three conditions in order for the landlord/tenant relationship to continue. However, material issues of fact exists as to what terms comprised the oral agreement or whether the oral agreement was, in fact, breached. For example, evidence exists in the record which, if believed by the triers of fact, supports the Delps' position that they did not owe $9,000.00 in additional rent.

infer that Defendants *deliberately evaded* the alleged "written agreement." Plaintiff's argument puts the proverbial cart before the horse. Without some evidence of the existence of a written agreement in the first instance, it is simply irrelevant that the Defendants might have intentionally tried to evade its enforcement. Plaintiff has failed to point to any writing in the record that could possibly constitute the referenced "written agreement."

Plaintiff further argues that the quantum of his attorneys' fees represents a consequential damage directly flowing from the Defendants' breach of contract, and the amount incurred will be an element of damage against his insurance company, Atlantic States, in the related litigation filed at docket number 2:08-cv-1040. According to Plaintiff, he would not have incurred attorneys' fees in this case and the related litigation but for Defendants breach of the lease and the substantial damage that resulted to the building. Again, Plaintiff fails to cite any legal authority for this proposition. Plaintiff's attempt to recast his attorneys' fees as consequential damages of the breach is unavailing and nothing more than a pedestrian attempt to circumvent the American Rule. Indeed, Pennsylvania appellate courts have held that attorneys' fees are not recoverable as consequential damages. *See, e.g., Haverstick v. Erie Gas Co.*, 29 Pa. 254, 1857 WL 7455, *3 (Pa. 1857) (holding in an action for breach of contract plaintiff could not recover as damages the cost of his attorney's fees to bring the lawsuit); *Caldwell v. Keystone Insurance Co.*, 243 A.2d 448, 449-50 (Pa. Super. Ct. 1968) (superior court affirmed the trial court's denial of the insured's damage claim, holding that the insured could not recover his costs, including attorneys' fees, associated with the obtaining of a judgment against the tortfeasor responsible for the insured's loss).

Finally, Plaintiff argues that because Defendants have not moved for summary judgment on his promissory estoppel claim, under which he seeks to enforce the terms of the written agreement which includes a provision for payment of Plaintiff's attorneys' fees, the issue of

attorneys' fees can only be addressed at trial. In support, Plaintiff cites *Thomas v. E.B. Jermyn Lodge No. 2,* 693 A.2d 974, 977 (Pa. Super. Ct. 1997), a case in which the superior court held that, under a promissory estoppel theory, sufficient evidence existed from which the jury could find that the plaintiff reasonably relied on the fraternal lodge's promise to pay his legal fees. The superior court's holding in *Thomas* is distinguishable, however, because in that case, the court found sufficient evidence existed that the fraternal lodge promised to pay plaintiff's legal fees. In contrast here, Plaintiff has failed to produce, in opposition to Defendants' summary judgment motion, any evidence that Defendants agreed to pay his attorneys' fees or at least raises an issue of fact in that regard.

In any event, the Court does not find Plaintiff's argument persuasive. The American Rule applies to Plaintiff's promissory estoppel claim as it is essentially a claim for breach of contract. As Plaintiff has failed to show that an exception to the American Rule applies to his promissory estoppel claim, the Court finds the mere fact that Defendants have not moved for summary judgment on his promissory estoppel claim does not preclude this Court from granting Defendants' summary judgment motion on Plaintiff's request for attorneys' fees.

Accordingly, as Plaintiff has failed to point to a statutory basis, clear agreement of the parties, or another applicable exception to the American Rule, the Court finds that Plaintiff is not entitled to recover his attorneys' fees from Defendants. Additionally, as the American Rule bars recovery of attorneys' fees on negligence claims, Plaintiff's negligence claim does not provide a basis for recovering attorneys' fees, and in any event, his negligence claim is barred by the gist of the action doctrine. *See* discussion *infra* in Part 2.

## 2. Negligence Claim

Defendants also request summary judgment on Plaintiff's negligence claim, arguing that the gist of the action doctrine precludes Plaintiff from recasting his ordinary breach of contract

claims as tort claims. The "gist of the action" doctrine prevents a plaintiff from bringing a tort claim that merely restates a breach of contract claim. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa.Super.Ct.2002); *Phico Ins. Co. v. Presbyterian Med. Serv. Corp.*, 663 A.2d 753, 757 (Pa. Super. Ct. 1995); *see also Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103 (3d Cir. 2001). The court of appeals in *Bohler-Uddeholm* further explained:

> Under the "gist of the action" test, to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral.... [T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 590 (1996) (en banc) (quoting *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 444 Pa.Super. 221, 663 A.2d 753, 757 (1995)). In other words, a claim should be limited to a contract claim when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." *Bash v. Bell Telephone Co.*, 411 Pa.Super. 347, 601 A.2d 825, 830 (1992).

247 F.3d at 103-04.[9] In addition, the Pennsylvania Superior Court noted in *Bash* that a breach of contract claim "may not be converted into a tort action simply by alleging that the conduct in question was done wantonly." *Phico Ins. Co.*, 663 A.2d at 757 (citing *Bash*, 601 A.2d at 829).

The mere existence of a contractual relationship between two parties does not necessarily bar one party from asserting a tort claim against the other. *Knit With v. Knitting Fever, Inc.*, Civ. A. No. 08-4775, 2009 WL 3427054, *4 (E.D.Pa. Oct. 20, 2009) (citing *Bohler-Uddelholm*, 247

---

[9] The Pennsylvania Supreme Court has yet to address the "gist of the action" doctrine, and, therefore, has not issued a ruling expressly adopting it. Pennsylvania's intermediate appellate courts have, however, and those decisions "must be accorded significant weight and should not be disregarded absent persuasive indication that the highest court would rule otherwise." *U.S. Underwriters Ins. Co. v. Liberty Mutual Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). The Pennsylvania Superior Court, as well as several district courts, have predicted that the Pennsylvania Supreme Court will adopt the doctrine. *See eToll*, 811 A.2d at 14 (Pa.Super. Ct. 2002); *Woods v. ERA Med LLC*, No. CIV.A. 08-2495, 2009 WL 141854, at *6 n. 11 E.D.Pa. Jan.21, 2009) (citing cases); *Freedom Prop., L.P. v. Lansdale Warehouse Co., Inc.*, Civ. A. No. 06-5469, 2007 WL 2254422, at *4-5 (E.D.Pa. Aug. 2, 2007).

F.3d at 104) (other citation omitted)).   Nonetheless, the gist of the action doctrine will preclude a party from pursuing a tort claim for the mere breach of contractual duties, where a separate or independent event giving rise to the tort is lacking.   *Id.* (citing *Smith v. Lincoln Benefit Life Co*., No. CIV.A.08-1324, 2009 WL 789900, at *20 (W.D.Pa. Mar. 23, 2009) (citing *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co*., 256 F.Supp.2d 329, 340 (E.D.Pa.2003)).   As the district court explained in *Knit With*:

> "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 651 (W.D.Pa.1999). To make this determination, the court must ascertain the source of the duties allegedly breached. *Sunburst Paper, LLC v. Keating Fibre Int'l.*, No. CIV.A.06-3957, 2006 WL 3097771, at *2 (E.D.Pa. Oct.30, 2006).   The doctrine bars tort claims: "(1) arising solely from a contract between the parties ...; (2) where the duties allegedly breached were created and grounded in the contract itself ...; (3) where the liability stems from a contract ...; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. *eToll*, 811 A.2d at 19 (internal quotation marks and citations omitted). "In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Sunburst Paper*, 2006 WL 3097771, at *2.

2009 WL 3427054, at *5.   The Court decides as a matter of law whether the gist of the action doctrine applies to the case at bar.   *Knit With,* 2009 WL 3427054, at *5 (citing *Alexander Mill Servs., LLC v. Bearing Distribs., Ins.,* No. CIV.A. 06-1116, 2007 WL 2907174, *8 (W.D.Pa. Sept. 28, 2007)); *see also eToll,* 811 A.2d at 15.

In support of their argument that the gist of the action doctrine precludes Plaintiff's negligence claim, Defendants point to certain allegations in the Amended Complaint, specifically, paragraphs 39, 49 and 51, wherein Plaintiff "haphazardly" alleges Defendants' use

14

of the property was "tortious." (Defs.' Mem. of Law in Supp. Partial Summ. J. at 5, ECF No. 48.) Defendants also point to paragraph 29 where Plaintiff alleges "Defendants assumed all obligations, covenants and conditions of the Tenants under the oral lease and were advised that hazardous materials were not permitted on the Subject Property." Am. Compl., ¶ 29. In addition, Defendants direct the Court to paragraph 32, in which Plaintiff alleges that the "Lease places all responsibility for repairs and maintenance of the Subject Property, including both structural and non-structural elements, solely on Defendants, the Tenants." Am. Compl., ¶ 32. Significantly, Defendants argue, Plaintiff testified that the allegations in paragraphs 29 and 32 apply to all Defendants. Defendants further submit that the damages alleged in support of Plaintiff's negligence claim are incidental to the damages arising out of the alleged breach of contract involving Defendants' use of the Subject Property. Finally, Defendants maintain that even after discovery, there is insufficient evidence from which the trier of fact could find that the alleged damages resulted from some transcendent social policies making the purported lease collateral.

In response, Plaintiff advances several arguments, none of which have any merit. First, Plaintiff submits that his tort claim is the gist of the action because he never agreed to allow Defendants to devastate his building and he never had an agreement with Delp Family Powder Coatings, as the tenancy began before it was incorporated. Plaintiff's argument misses the mark. If the standard for applying the gist of the action doctrine was, as Plaintiff contends, merely asserting that he did not agree to allow Defendants to devastate his building,[10] it would turn the doctrine on its head. Plaintiff would have the Court ignore the fact that he has alleged in his breach of contract claim that under the oral lease, the Defendants assumed all obligations,

---

[10] Plaintiff's version of the test appears to be grounded on a contract principle, *i.e.,* agreement, not on a tort principle, *i.e.,* a duty to act based on established social policy.

covenants and conditions of the Tenants (Am. Compl., ¶ 29), assumed all responsibility for repairs and maintenance of the Subject Property (Am. Compl., ¶32), and that under the oral lease and the proposed lease agreement, the Individual Defendants are liable for all of the obligations of Tenants, including, among other things, seeking authorization prior to modifications and/or alterations of the Subject Property, and maintaining and repairing the Subject Property in accordance with the lease (Am. Compl., ¶ 44). However, Plaintiff cannot claim for purposes of his breach of contract claim that an enforceable agreement exists, and then turn around and argue, for purposes of his tort claim (and the gist of the action doctrine), that there is no agreement. Plaintiff simply cannot have it both ways.[11]

Contrary to Plaintiff's argument, because Plaintiff alleges that Defendants committed a tort in the course of carrying out a contractual agreement, the Court must look to the source of the duties allegedly breached. *Knit With,* 2009 WL 3427054, at *5 (citing *Sunquest Info. Sys.,* 40 F.Supp. 2d at 651; *Sunburst Paper,* 2006 WL 3097771, at *2). When the Court does so here, it is constrained to find that the duties allegedly breached were created and grounded in the oral lease and/or proposed lease agreement,[12] and Defendants' liability stems from its contractual relationship with Plaintiff. Indeed, Plaintiff's own pleading asserts that liability stems from the oral lease and the proposed lease agreement. (Am. Compl., ¶ 44.) In addition, the proposed lease agreement (Am. Compl., Ex. I), which Plaintiff urges the Court to enforce, contemplates that Tenant[13] shall be responsible for all repairs and/or damages to the Subject Property caused by Tenant's use or possession of said property, regardless of whether said use or possession was

---

[11] It is one thing to advance alternate legal theories of recovery but quite another to take inconsistent factual positions .

[12] Defendants' responsibilities vis a vis the resulting damage to the Subject Property are set forth in the proposed written lease agreement (Am. Compl., Ex. I) which Plaintiff urges this Court to enforce.

[13] The proposed lease agreement states that the term "Tenant" collectively refers to all of the individual Defendants as well as Delp Family Powder Coatings. (Ex. I, Preamble.)

negligent, willful or illegal, or the result of the willful or illegal acts or negligence of Tenant's employees, guests or invitees. Ex. I, ¶ 3(A). Moreover, the proposed lease agreement contemplates that should Tenant fail to discharge any of their repair and maintenance responsibilities, after notice to cure and upon failure to cure such default, Landlord may, in his sole discretion, complete the repairs or maintenance and bill the cost of such to Tenant as additional rent. Ex. I, ¶ 3(B). Thus, it is clear from the proposed lease agreement that Defendants' alleged duties regarding maintenance and repair of, and/or damage to, the Subject Property derive from their contractual relationship, and not a social policy embodied in tort law.[14] Also, quite interestingly, in his memorandum of law filed in support of his motion for summary judgment (ECF No. 50), Plaintiff states: "To be clear, the Defendants, *inter alia*, purposefully removed the oil heater and numerous electric service lines in breach of the lease, neither of which can be construed as negligent conduct." Thus, Plaintiff's own argument shows that he believes that the duties allegedly breached were created and grounded in the oral lease.

In light of these circumstances, it is clear that the contractual relationship here was not collateral. It is of no moment, therefore, that a factual dispute exists with regard to the terms of the oral lease and whether the parties agreed to execute a written lease (the proposed lease agreement), as the determination of whether the gist of the action doctrine applies is a question of law, not fact.

There is simply no basis in the record or in the law for Plaintiff's remaining arguments. The possibility that a jury may find that Defendants did not breach a term of the oral lease does not make the gist of the action a tort. As discussed above, the gist of the action test focuses on the source of the duties alleged; it is not predicated upon the potential outcome in a given case.

---

[14] The final, if not fatal, flaw in Plaintiff's argument is his failure to demonstrate that Defendants' duties, with regard to the use and possession of the Subject Property, were imposed as a matter of social policy.

Nor is it relevant that Plaintiff intends to present evidence at trial of fraudulent conduct by Defendants—Defendants are seeking to apply the gist of the action doctrine to bar Plaintiff's negligence claim. Finally, Plaintiff argues that the gist of the action doctrine flows from Pennsylvania's Civil Rules of Procedure, which required actions to be designated as either actions in trespass or assumpsit, for purposes of gauging whether some other rule of law (like a statute of limitation) should apply as a limitation on a claim. Since Defendants are not attempting to assert a defense other than gist of the action, Plaintiff maintains that application of the gist of the action doctrine is unnecessary. The Court finds Plaintiff's argument completely lacking in merit. Not surprisingly, Plaintiff fails to cite any legal authority in support of his argument.

Accordingly, the Court finds that the gist of the action doctrine bars Plaintiff's negligence claim. Thus, Defendants are entitled to judgment as a matter of law in their favor on Plaintiff's negligence claim.

### C.    Conclusion

For the reasons set forth above, the Court will grant Defendants' Motion for Partial Summary Judgment in its entirety.

An appropriate order will follow.

### IV.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment in his favor on the following points:  (1) the Delps, as lessees, are responsible for breaching the oral lease agreement with respect to the unpaid rent, unauthorized alterations, and the property damage to the building; (2) the Delps negligently set up, operated and maintained their powder coating operation, which caused property damage to the Lewis Building in the form of damaged roof shingles, sheathing and

trusses, concrete slab, and unpermitted disposal of industrial waste water in violation of Pennsylvania law; and (3) no evidence exists in the record to dispute Plaintiff's evidence that the property suffered a diminution of value due to the extensive property damage. Since the Court has already ruled in Defendants' favor on Plaintiff's negligence claim, the Court finds that Plaintiff is not entitled to summary judgment as a matter of law as to the second point set forth above. Thus, the Court will consider Plaintiff's motion with respect to the first and third points only.

A.    **Relevant Facts**[15]

Plaintiff submits that material issues of fact do not exist as to any of the points upon which he seeks summary judgment. However, a review of the parties' submissions and the record evidence clearly reveals otherwise.[16]

Although the parties do not dispute that an oral lease existed, that appears to be the extent of their consensus. From the record, it is clear that the parties dispute the terms of the oral lease, including the actual parties to the lease, and the date it was formed, and whether they agreed to execute a written agreement. For example, Plaintiff contends that the parties to the oral lease consisted of Clyde and Donna Delp, and Walter and Carol Delp. Defendants, on the other hand, dispute that Donna and Carol Delp had any involvement in the business, or that their spouses were acting on their behalf. Moreover, Clyde and Walter contend that they did not enter into the

---

[15] As a preliminary matter, the Court notes several infirmities with Plaintiff's Concise Statement of Material Facts ("Pl.'s CSMF"), ECF No. 51. In many instances, the Court was unable to locate in the record documents cited by Plaintiff in support of his statement. For example, Exhibits 5, 6 and 7 to Walter Delp's deposition are missing. Also, many statements are not supported by the record citations. *See, e.g.,* ¶¶ 8, 12, 13, & 26, Pl.'s CSMF. Or, the cited evidence does not support the statement. *See, e.g.,* ¶¶ 10, 11, 16 (second and third sentences), 17 (second sentence), 18, 25.

[16] The factual disputes noted below by the Court are not to be construed by the parties as the only facts deemed in dispute, but are merely a representative sample of the many contested facts in this litigation.

oral lease in their personal capacities, but rather, entered into the oral lease, initially as the incorporators of DFPC and later as its officers.

The parties also dispute whether Defendants owe Plaintiff $9,000.00 in unpaid rent. Plaintiff submits that he agreed to abate the rent by $1,500 a month for the first six months as an accommodation to the Delps during their start-up period, and the Delps were to pay the $9,000.00 in abated rent back over subsequent months. (Pl.'s CSMF at ¶7, ECF No. 51.) Defendants strongly dispute this statement, citing evidence in the record in support of their position that the $9,000.00 reduction in rent was in exchange for DFPC paying for the labor and materials needed to make alterations (approved by Nick Lewis) to the Subject Property for 480 volt electrical and natural gas hook-ups which were required for its powder coating operation. (Defs.' Concise Stmt. in Opp'n, ¶¶ 16-18, 21, ECF No. 54.)

Also in dispute is whether Defendants needed and/or obtained prior authorization from Plaintiff to make alterations to the building for their powder coating operation. Plaintiff contends that the Delps needed prior authorization from him to make any modifications or alterations to the building for their powder coating operation but none was sought. In response, Defendants counter that Nick Lewis, as Plaintiff's agent, approved all alterations and no unauthorized alterations were made to the building. (Defs.' Concise Stmt. in Opp'n at ¶¶30, 55, ECF No. 54.) Plaintiff also contends that the Delps never sought or obtained approval from him to use a small "evaporator" unit as a means to eliminate industrial wastewater. (Pl.'s CSMF at ¶ 16, ECF No. 51.)[17] Defendants contend that they did not need Plaintiff's approval to use the evaporator and, in any event, Nick Lewis had express knowledge that the evaporator was

---

[17] Plaintiff 's citation to record, Nick Lewis Dep. at 172, does not support this statement.

installed and being used and never raised any objection. (Defs.' Concise Stmt. in Opp'n at ¶¶ 30, 38-39.)

The parties also dispute whether the Defendants were responsible for the property damage to the building, and the related issue of the quantity of damages Plaintiff sustained as a result of Defendants' actions. Plaintiff contends that Defendants' negligent operation of their powder coating business caused damage to the Subject Property, relying principally on the expert report of CEC Forensic Engineers dated May 14, 2010 (Ex. 10, Pl.'s App., ECF No. 52-2) ("CEC Report"), and cost estimates provided by various contractors/service providers (Ex. 10, Tab Q, Pl.'s App., ECF No. 52-5). With regard to the alleged diminution of value of the Subject Property, Plaintiff submits the report of his expert real estate appraiser, James Kelly. Defendants deny that their powder coating operation caused the alleged property damage, and cite to the expert report of John L. Suhrie, Professional Engineer, in support. (Defs.' Concise Stmt. in Opp'n at ¶ 64, ECF No. 54.) In addition, the expert report of Gateway Engineers, which was submitted by Plaintiff, reaches the same conclusions as Mr. Suhrie. (Pl.'s App., Ex. 10, Tab E, ECF No. 52-3.) Defendants also deny Plaintiff's claim for diminution of value and cite the expert report of James S. Keffalas, certified real estate appraiser. (Defs.' Concise Stmt. in Opp'n at ¶ 63, ECF No. 54.) Defendants further contend that Plaintiff failed to mitigate his damages, which also calls into question the quantity of damages on which Plaintiff requests summary judgment in his favor. (Defs.' Concise Stmt. in Opp'n at ¶¶ 60-61, ECF No. 54.)

Thus, the Court concludes that Defendants have adduced sufficient evidence to demonstrate that the above facts, which are material to deciding Plaintiff's summary judgment motion, are disputed. Accordingly, on this basis alone, Plaintiff is not entitled to summary judgment in his favor.

**B.      Discussion**

Given that the material facts are disputed, the Court will only briefly address Plaintiff's legal arguments in support of summary judgment.

Plaintiff's legal argument in support of his first point on which he seeks summary judgment focuses mainly on the issue of whether Donna and Carol Delp can be held personally responsible for the breach of the oral lease.   In support of this argument, Plaintiff relies on inapposite Pennsylvania case law involving a husband's authority to act for both himself and his wife in dealing with entireties property.   No such authority exists in this case as it does not involve entireties property, but rather, a commercial lease.   Moreover, the fact that the first two rent checks were drawn on personal checking accounts that also bore the names of the Delp wives is insufficient alone to show an expressed or implied authority to act on their behalf.[18]  The undisputed evidence shows that neither was involved in the powder coating business—neither spoke to Nick Lewis over the phone nor met Clint Lewis, and Carol Delp testified she never spoke to Clint Lewis; nor did either wife sign any checks or other documents relating to the business.   (Defs.' Concise Stmt. in Opp'n at ¶¶ 4, 7-13.)   There is simply no evidence in the record to suggest that Carol and Donna Delp were involved in the powder coating business.[19]

Plaintiff also advances the argument that under Pennsylvania common law, a lessee is responsible to its lessor for all harm caused to the premises.   In support, Plaintiff refers to the following passage from the Pennsylvania Supreme Court's opinion in *Earle v. Arbogast & Bastiann*:

---

[18]  Plaintiff's reference to Carol Delp's deposition testimony (Pl.'s CSMF at ¶ 2) cannot be construed as evidence of her participation in the oral lease at issue here, as her response was to a hypothetical question.
[19]  Because Defendants have not cross-moved for summary judgment on the issue of whether Defendants Carol Delp and Donna Delp could be held liable on Plaintiff's breach of the oral lease, the Court is constrained by controlling precedent in this circuit to refrain from entering summary judgment *sua sponte* in Defendants' favor.  *See Gibson v. Mayor & Council of the City of Wilmington,* 355 F.3d 215, 222-24

> Generally, in the absence of an express covenant on the subject, the law implies a covenant on the part of the lessee so to treat the demised premises that they may revert to the lessor unimpaired, except by usual wear and tear, and uninjured by any willful or negligent act of the lessee. The implied covenant does not, however, extend to the loss of buildings by fire, flood, or tempest, or enemies, which it was not in the power of the lessee to prevent, and there is no implied covenant that the lessee shall restore buildings which have been destroyed by accident without fault on his part.

180 Pa. 409, 416-17, 36 A. 923 (1897) (citations omitted).  As here, the lease in *Earle* was an oral lease, which did not include an agreement to repair or to deliver the premises in good order and condition at the end of the lease term.  Under such circumstances, the *Earle* court held that the lessees were under an implied duty not to negligently injure the leased premises while using it.  *Id.* at 418, 36 A. at 924.  The court further opined that in order to recover on the basis of an implied covenant, the lessor was required to show that the lessee was negligent in its use of the leased property.  *Id.*  Thus, although an explosion occurred in machinery used by the lessees causing damage to the leased premises, the court affirmed the judgment below in favor of the lessees on the basis that the lessor failed to meet his burden to proving that the lessees were negligent.  *Id.*

The court's holding in *Earle* actually undermines Plaintiff's argument that under Pennsylvania law a lessee is responsible to its lessor for *all* harm caused to the premises.  Rather, as *Earle* makes clear, in the absence of an express covenant, a lessee is only responsible for harm to the leased premises caused by its negligence.  However, Plaintiff has not asserted a claim for breach of the implied covenant in his Amended Complaint.  Even if he had, material issues of fact exist precluding summary judgment on that issue.

---

(3d Cir. 2004); *DL Resources, Inc. v. FirstEnergy Solutions Corp.,* 506 F.3d 209, 223-24 (3d Cir. 2007).

In opposing summary judgment on Plaintiff's first point, Defendants argue that Plaintiff has failed to offer any factual support that a lease was formed with him on February 2, 2002, as his identity was not discovered by any of the Defendants until sometime after the Grand Opening in late May of 2002, and exhibits relied on by Plaintiff in support of individual liability all bear Nick Lewis' name rather than Plaintiff's. In addition, Defendants cite to evidence in the record in support of their argument that material issues of fact exist as to the parties to the oral lease, as well as the actual formation date of DFPC, noting that it is possible for a corporation to obtain de jure/de facto status prior to the recording date of its articles of incorporation. Defendants further submit that Plaintiff's evidence fails to adequately disprove their testimony denying the rent abatement or confirming any necessary authorizations for alterations were obtained. The Court agrees with Defendants that material issues of fact exist precluding summary judgment on Plaintiff's first point.

As to his argument that Defendants' powder coating operation negligently caused extensive damage to his building, Plaintiff submits that his concise statement contains ample evidence of the damage to his building, as contrasted with Defendants' evidence, which consists of one expert report from Mr. Suhrie. However, the Court notes that the expert report of Gateway Engineers also supports Defendants' position, as does the expert report of James Keffalas. Plaintiff also takes issue with the substance of Mr. Suhrie's report. This issue is best raised, however, either in a *Daubert* hearing or upon cross examination of the witness. In any event, Plaintiff's argument requires a weighing of the evidence, which is within the sole province of the jury. Moreover, Plaintiff's argument presumes, without proving, that Defendants negligently operated their business.[20] In opposition, Defendants argue only that Plaintiff has

---

[20] Defendants' negligence, if any, would only be relevant to the extent Plaintiff was pursuing a claim for breach of the implied covenant to turn over leased premises in good condition. However, no such claim is

failed to brief the issue of application of any social duty or policy that would support his claim of negligence against any of the Defendants. To the extent Plaintiff seeks summary judgment in his favor on the issue of Defendants' negligence, Plaintiff's motion must fail for the same reasons stated by this Court in granting Defendants' motion for partial summary judgment on Plaintiff's negligence claim. *See* Section III, Part 2, *supra*. In any event, material issues of fact exist as to whether Defendants' powder coating operation caused the alleged property damage to the Subject Property.

Finally, Plaintiff submits that the quantity of damages he sustained cannot reasonably be disputed, and offers in support the CEC Report and the report of his expert real estate appraiser, James Kelly. Plaintiff further posits that Defendants have not adduced any credible evidence of the cost of repair nor of the diminution in value of the Subject Property. Based on this evidence, Plaintiff requests entry of judgment in the amount of $621,900.00, which is comprised of the diminution of value, one-year's lost rental income, capital gains taxes and transfer taxes.

In response, Defendants counter that Plaintiff has ignored their denial of damages and their expert reports supporting their denial, specifically the reports of James S. Keffalas, certified real estate appraiser, and John L. Suhrie, Professional Engineer. (Defs.' Concise Stmt. in Opp'n at ¶¶ 63-64, ECF No. 54.) Mr. Suhrie offers an opinion regarding the cause of cracks to the concrete which he attributes to higher than normal shrinkage that was caused by excessive water in the concrete mix and/or the size of the panel poured, and scaling of concrete floor due to poor quality concrete and/or inadequate or over finishing of the slab. Suhrie Report at 5-6 (Defs.' App, Ex. H, ECF No. 55/65). Mr. Suhrie also observed photos of the building's interior taken in 2002, prior to DFPC's occupancy of the building, showing blocking of the roof ventilation and ridge vents, a condition that could lead to mold growth. *Id.* at 6. His inspection did not reveal

---

presented in Plaintiff's Amended Complaint.

any unusual deflections, unevenness or structural problems with the roof. *Id.* at 7. In addition, the expert report of Gateway Engineers, which was submitted by Plaintiff, reaches the same conclusions as Mr. Suhrie. Pl.'s App., Ex. 10, Tab E, ECF No. 52-3. Mr. Keffalas opines that the fair market value of the Subject Property as of September 30, 2006 was $525,000.00, indicating that Plaintiff sold the Subject Property for more than the existing market value. Keffalas Report at 10 (Defs.' App. 1, Ex. G (ECF No. 55/65).

The Court finds the evidence cited by Defendants is sufficient to raise a question of material fact with regard to the quantity of Plaintiff's alleged damages. Moreover, in order to find in favor of Plaintiff, the Court would have to weigh the testimony of the experts. However, that task is reserved exclusively for the triers of fact. Accordingly, summary judgment in Plaintiff's favor on the amount of his damages is inappropriate.


## V.     <u>CONCLUSION</u>

For the reasons set forth above, the Court finds material issues of fact exist precluding summary judgment in Plaintiff's favor as to whether (1) the Delps, as lessees, are responsible for the unpaid rent, unauthorized alterations, and the damage to the building, and (3) evidence exists in the record to dispute Plaintiff's evidence that the property suffered a diminution of value due to the extensive property damage. In addition, since the Court has already ruled in Defendants' favor on Plaintiff's negligence claim, the Court finds that Plaintiff is not entitled to summary judgment as a matter of law as to whether the Delps negligently set up, operated and maintained their powder coating operation, which caused property damage to the Lewis Building. Accordingly, the Court will deny Plaintiff's motion for summary judgment.

An appropriate order will follow.

Dated:  March 31, 2011                    By the Court:

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:     All Counsel of Record
        *Via Electronic Mail*